# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KEVIN HELM,

Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

Defendant.

1:10-cv-01801 LJO-BAM

**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

## BACKGROUND

Plaintiff Kevin Helm ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. Before the Court is Plaintiff's Motion for Summary Judgement (Doc. 17); the Commissioner's Response (Doc. 20); and Plaintiff's Reply Brief (Doc. 24). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

//

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed an application for benefits on August 29, 2007, alleging disability beginning July 2, 2001. AR 133. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 44. ALJ Christopher Larsen held a hearing and subsequently issued an order denying benefits on January 5, 2010, finding Plaintiff was not disabled. AR 20-32. This appeal followed.

**Medical Record**

Plaintiff alleges that he has been disabled since July 2, 2006, due to bipolar disorder and severe depression anxiety. AR 133. Therefore, the record is summarized here in chronological order with particular regard to Plaintiff's alleged mental impairments. Nonetheless, the record as a whole was reviewed and will be specifically referenced as necessary to this Court's decision. AR 229-345.

Plaintiff began receiving treatment for his alleged mental impairments in 2007. Treatment records from Satnam S. Atwal, M.D., noted Plaintiff's prescribed medication and his mental state. AR 334-341. A mental status examination from 2007 by Dr. Atwal showed that Plaintiff was normal or average in all areas, except for affect/appearance, which was restricted, and his mood was depressed and anxious. AR 338. Plaintiff reported to Dr. Atwal that he smoked one pack of cigarettes a day, had no ambition to do anything, but could also be the life of the party. AR 340. Plaintiff stopped treatment with Dr. Atwal in June 2008. Dr. Atwal was asked to complete a report detailing Plaintiff's mental status for the hearing, but Dr. Atwal's office refused. AR 26.

On February 9, 2008, Greg Hirokawa, Ph.D., performed a psychological evaluation of Plaintiff, reviewed progress notes from Plaintiff's doctor, and reviewed Plaintiff's report to the agency. AR 247-252. During the exam, Plaintiff told Dr. Hirokawa that he used methamphetamine on a heavy basis from 2003-2006. AR 248. Dr. Hirokawa also diagnosed marijuana abuse. AR 250. Plaintiff reported to Dr. Hirokawa feeling depressed, anxious, having poor sleep, mood swings,

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

being withdrawn, being easily frustrated, and having a loss of interest in things. AR 250. Plaintiff reported he was in mental health treatment and was taking Celexa, Wellbutrin, Tegretol and Soma, medications that helped control his mood swings. AR 247-48.

During the examination, Dr. Hirokawa reported that Plaintiff appeared depressed and had a restricted affect. AR 249. After testing, Dr. Hirokawa assessed several rule-out diagnoses: methamphetamine-induced mood disorder; and bipolar disorder Type 2. AR 250. Dr. Hirokawa also assessed a generalized anxiety disorder, marijuana abuse, methamphetamine dependence in reported remission, and a personality disorder. AR 250. He assessed Plaintiff with a Global Assessment of Functioning (GAF) score, both currently and for the past year, of 61. AR 251. Dr. Hirokawa also assessed many mild limitations in Plaintiff's ability to do work: the ability to remember location and work-like procedures; to understand, remember and carry out very short and simple instructions; to understand and remember detailed instructions; to maintain attention and concentration for extended periods; and to accept instruction from supervisors and respond appropriately to criticism. AR 251. He also assessed mild limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual; to deal with changes in the work setting; and to sustain an ordinary routine without special supervision. AR 251.

Dr. Hirokawa also assessed Plaintiff's limitations. According to Dr. Hirokawa, Plaintiff has "mild to moderate" limitations in the ability to: (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; (2) withstand the stress of an eight-hour workday; and (3) interact with coworkers. AR 251. Dr. Hirokawa concluded: "[t]he likelihood of the claimant emotionally deteriorating in a work environment is minimal to moderate." AR 252.

On March 5, 2008, State agency physician Sadda V. Reddy, M.D., found that Plaintiff had no severe physical impairments and could perform basic work activities. AR 254, 255.

On March 17, 2008, State agency physician Raffi Tashjian, M.D., found that Plaintiff had mild limitations in various mental functional areas. AR 264-270. According to Dr. Tashjian, Plaintiff has moderate limitations in the ability to: (1) "maintain attention and concentration for extended periods;" (2) "perform activities within a schedule, maintain regular attendance, and be

punctual within customary tolerances;" (3) "interact appropriately with the general public." AR 268-269.

On July 14, 2008, State agency physician V. Sodha, M.D., affirmed Dr. Tashjian's opinion, finding that Plaintiff only had mild to moderate limitations in mental functional areas. AR 274.

In August 2008, Dr. House began treating Plaintiff and prescribing mental health medications. He or someone else in his office treats Plaintiff twice a month to monitor and adjust his medications. AR 275, 300. On November 26, 2008, Dr. House reported to the agency that Plaintiff suffers from major depression versus bipolar disorder, and severe anxiety/panic disorder. AR 275. Dr. House wrote that mental status exams at Plaintiff's monthly visits confirm ongoing symptoms of anxiety and depression, which preclude Plaintiff from being able to perform a full-time job. AR 275.

Dr. House opined that Plaintiff has serious limitations in the following categories: relating to co-workers; dealing with the public; using judgment; interacting with supervisors; dealing with work stress; and maintaining attention/concentration. AR 301. Plaintiff is moderately impaired in doing simple job tasks, and markedly impaired in maintaining attention for two hour increments. AR 302. Plaintiff is extremely impaired in the ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work. AR 302. Dr. House also opined that Plaintiff has not responded well to treatment, and his prognosis is poor. AR 302.

**Hearing Testimony**

ALJ Larsen held a hearing on December 7, 2009, in Fresno, California. Plaintiff appeared and testified; he was assisted by attorney Gina Fazio. Vocational Expert ("VE") Jose L. Chaparro also testified. AR 46-63.

At the time of the hearing, Plaintiff was thirty-nine-years old and living in Selma, California, with his wife and his fourteen-year old daughter. AR 24. Plaintiff did not graduate from high school and has no vocational training. AR 24, 48. With regard to previous employment, Plaintiff's past work includes work as an exterminator, retail sales associate, and construction worker. AR 48-50.

With respect to drug use, Plaintiff testified that he was prescribed marijuana for increased appetite. AR 52. Plaintiff also testified that he used methamphetamine for several years, until he

was diagnosed with bladder cancer, in late 2005. AR 52. He has not used methamphetamine since then. His depression and anxiety intensified after he was diagnosed with cancer. AR 51. After his cancer went into remission, he attempted to go back to work, in 2006, but he could not handle the stress. Plaintiff stated "the two weeks I worked, I didn't eat. I didn't hardly sleep, I was just a mess." AR 51.

When asked about his typical day, Plaintiff stated he gets up about 11:00am or 12:00pm, with the help of his wife. She generally calls or texts him to make sure he is up and that he has taken his medicine. Plaintiff testified that, due to anxiety, he frequently does not leave the house. AR 53. However, Plaintiff goes to his parents' house to eat once a week, and occasionally goes out to dinner with his wife. Plaintiff watches television for six to eight hours a day and generally does not get to sleep until 2am or 3am. AR 53, 57. Plaintiff sees a psychiatrist every other week and visits with Dr. House once a month or every other month for his medications. With respect to medications, Plaintiff also testified that his medications help his symptoms somewhat, but they do not cure his anxiety. AR 53. Plaintiff describes his overall feeling as "cloudy all the time." AR 54. He has trouble with concentration and he experiences "butterflies throughout [his] body" and he is anxious. AR 54. Plaintiff also testified he experiences severe panic attacks three to five times a week, which can last up to half an hour or half a day.

Thereafter, the ALJ elicited the testimony of vocational expert Jose L. Chaparro. AR 60. VE Chaparro indicated that Plaintiff's past relevant work includes: an exterminator, light and skilled; and parts salesperson, light and skilled. AR 61. VE Chaparro opined that Plaintiff could not perform his past relevant work as an exterminator or parts salesperson. Plaintiff could however complete work at the heavy, unskilled level. AR 61.

VE Chaparro was asked to assume a hypothetical worker of Plaintiff's age, education and experience, with no exertional limitations, but who could only perform simple repetitive tasks with limited contact with the general public. AR 62. The VE indicated such an individual could perform the work of a commercial or institutional cleaner, DOT[2] 381.687-014. Further, the VE indicated

[2] "DOT" refers to the Dictionary of Occupational Titles.

such an individual could also perform the work of: (1) a general farm worker II, DOT 421.687-010; and (2) a lumber handler, DOT 922.687-070. AR 61.

Plaintiff's counsel declined to ask any questions of the VE. AR 62.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 22-26.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 2, 2006, the alleged onset date. AR 22. Further, the ALJ identified bipolar disorder, anxiety disorder, personality disorder, and cannabis dependence as severe impairments. AR 22. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment or combination of impairments did not meet or exceed any of the listed impairments. AR 22.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but can perform only simple repetitive tasks. AR 23.

Next, the ALJ determined that Plaintiff was unable to perform his past relevant work. Nevertheless, considering Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 31. Therefore, the ALJ determined Plaintiff was not disabled. AR 32.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred by (1) failing to meet his burden at step five by not presenting all limitations assessed by Dr. Tashjian to the vocational expert; (2) failing to meet his burden at step five by not presenting all limitations assessed by Dr. Hirokawa to the vocational expert; (3) improperly rejecting the treating physicians opinion; (4) improperly rejecting lay witness testimony; and (5) improperly evaluating his credibility.

**DISCUSSION**[3]

A. ***Step Five Findings***

As Plaintiff's first and second arguments are similar and related, the Court will address them together. In his first two arguments, Plaintiff asserts the ALJ erred by failing to meet his burden at

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

step five, by failing to present all limitations assessed by Drs. Tashjian and Hirokawa to the vocational expert (Doc. 17 at 8-10). Plaintiff argues that because the ALJ did not include all the limitations set forth by Drs. Tashjian and Hirokawa in the hypothetical he presented to the VE, the ALJ's reliance on the VE's response was unfounded. The Commissioner replies that the ALJ's step five finding was supported by substantial evidence and is thus proper. (Doc. 20 at 10).

At step five of the sequential analysis, the RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p, 1996 SSR LEXIS 5. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p, 1996 SSR LEXIS 5. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

ALJ Larsen found as follows:

> In activities of daily living, Mr. Helm has mild restriction. He states he has no problem with handling his own personal needs. He drives; he sleeps 8 or 9 hours a night; he watched television; he shops and otherwise seems to carry on his daily life. In social functioning, Mr. Helm has mild difficulties. He has some friends, and visits with his family and with his friends. With regard to concentration, persistence, or pace, Mr. Helm has moderate difficulties. Medical professionals have concluded he can carry out at least simple, repetitive tasks in the work place.

At he hearing before the ALJ, the ALJ questioned the VE as follows:

> **[Q]:** Okay. Let's assume a worker of Mr. Helm's age, education and work experience. First of all let's assume our hypothetical worker can perform simple repetitive tasks with limited contact with the general public. Could that worker perform any of Mr. Helm's past relevant work?
>
> **[A]:** He could not do either job, Your Honor.
>
> **[Q]:** Could he perform other jobs in the regional or national economy?
>
> **[A]:** Yes.

Plaintiff argues that the ALJ failed to incorporate his moderate limitations in: "concentration,

performing activities within a schedule, and being punctual within customary periods into the hypothetical question." (Doc. 17 at 9).

Generally, hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). In this case, the ALJ found that plaintiff had mild restrictions with respect to activities of daily living; mild difficulties with social functioning; and moderate difficulties in regards to concentration, persistence, or pace. AR 23.

In this case, the ALJ's failure to include "concentration, performing activities within a schedule, and being punctual within customary periods into the hypothetical question" was harmless, because the Ninth Circuit has already held that moderate mental limitations do not require vocational expert testimony. *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007). In *Hoopai*, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* After the ALJ utilized the grids at step five to determine that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed. *Id.* at 1075. The Ninth Circuit rejected this argument, holding that these moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the grids without the assistance of a vocational expert. *Id.* at 1077. Here, likewise, the ALJ's failure to include Plaintiff's moderate mental limitations in the hypothetical question was harmless.

Moreover, as indicated by the Ninth Circuit in *Stubbs-Danielson*, deficiencies in concentration and pace are adequately captured by an RFC restriction for simple, routine, repetitive work, which was a limitation posed to the VE in this case, and the VE identified work that Plaintiff could perform given this limitation. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

2008) (holding that a hypothetical question concerning a medical expert's opinion of a claimant's limitation to simple, routine, or repetitive tasks sufficiently captures even a moderate limitation of concentration, persistence, or pace noted by the expert); *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence, or pace and pronounced claimant as possessing the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration, persistence, or pace). Therefore, even assuming *arguendo* that ALJ Larsen may have erred in failing to note in his decision Plaintiff's moderately limited ability to "maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary periods," any error was inconsequential to the ALJ's ultimate non-disability determination, and was, therefore, harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

B. ***Physician Opinion Evidence and Plaintiff's Psychological Impairments***

Plaintiff next argues that the ALJ improperly rejected the opinion of his treating physician Dr. House. Plaintiff argues that his treating physicians' opinion is supported by all three of the mental health professionals' opinions. In opposition, Defendant contends that no credited opinion assessed limitations as extreme as those assessed by Dr. House and that the ALJ properly rejected Dr. House's opinion. The Court agrees.

Cases in this Circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

The ALJ gave "little to no weight" to Dr. House's opinion that Plaintiff had poor ability to maintain concentration, attention, persistence, and pace because: (1) Dr. House did not provide any objective evidence or analysis or subjective complaints to support his opinion; and (2) "his opinion is inconsistent with the other substantial evidence in the case record." AR 30.

The ALJ summarized Dr. House's medical opinion as follows:

> On November 26, 2008, Dr. Matt House D.O., completed a one-page form questionnaire indicating Mr. Helm is precluded from any full time work at any exertional level, including sedentary. His primary impairments are major depression versus bipolar disorder, and severe anxiety/panic disorder. The opinion is based on findings of depression and anxiety and a mental examination consistent with the complaints. Dr. House indicates he first saw Mr. Helm in August, 2008, and he was disabled at that time. On November 10, 2009, Dr. House completed a multi-page form report indicating Mr. Helm was first seen in August, 2008. According to Dr. House, Mr. Helm has mood instability, anxiety, panic attacks, irritability, problems holding a thought pattern, and problems with concentration. The diagnoses are panic disorder, bipolar disorder, generalized anxiety disorder, and cannabis dependence. His response to treatment is suboptimal and the prognosis is guarded, and Dr. House did not expect significant improvement. Mr. Helm, in Dr. House's view, has poor ability to relate to coworkers, deal with public, use judgment, interact with supervisors, deal with work stress, and maintain attention and concentration; fair ability to follow work rules and function independently because he has high levels of anxiety and mood instability. He has extreme impairment in ability to relate and interact with supervisors and coworkers; ability to understand, remember and carry out an extensive variety of technical or complex job instructions; and ability to deal with the public. He has marked impairment in ability to handle funds. He has moderate impairment in ability to understand, remember and carry out simple one or two job instructions. He has poor ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. He has fair ability to maintain personal appearance. He has no ability to manage benefits. His wife handle finances.

> I give little to no weight to the opinions expressed by Dr. Matthew House, D.O. His professional designation is that of an osteopathic physician. He does not designate himself as a psychiatrist. However, he is with the Psychological Service Center, and from that I assume his practice requires psychological expertise. Even so, his reports are not properly supported by medical findings, subjective complaints, detailing of history, or a discussion of medical reasoning. His conclusion that Mr. Helm is not capable of full time work intrudes on an issue reserved to the Commissioner. He is a treating physician, but his opinion is unsupported, and is inconsistent with the other substantial evidence in the case record. Dr. House appears to have considered Mr. Helm entirely credible, although I do not know with certaintly [sic] because the doctor did not list Mr. Helm's subjective complaints.

AR 30.

Here, the ALJ gave specific, legitimate reasons for rejecting Dr. House's opinion. Most notably, Dr. House's opinion was inconsistent with the other physicians opinions and with the medical record. (Doc. 18 at 7). The ALJ thoroughly described the opinion of Dr. House as well as the other medical opinions and concluded that Dr. House's opinion was an outlier among both the non-examining and examining physicians. No credited opinion assessed limitations as extreme as those assessed by Dr. House (*i.e.*, finding that Plaintiff could not work and finding extreme mental limitations in several functional areas). AR 275, 300-303. The most that any physician found was mild to moderate mental limitations, and no other physician stated that Plaintiff could not work. In fact, every other physician concluded that Plaintiff retained an ability to perform at least some work. AR 275, 300-303. The ALJ noted the conflict between Dr. House's opinion and the other opinions, and the ALJ legitimately decided that Dr. House's outlier status entitled that opinion to "little or no weight" AR. 30. The ALJ properly resolved the conflict between Dr. House's opinion and the opinions of every other medical source in the record that Plaintiff was capable of working with certain restrictions. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989) (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources).

Second, the ALJ correctly noted the conclusory nature of Dr. House's opinion. A lack of objective support is a strong basis for rejecting a physician's opinion. 20 C.F.R. § 416.927(d)(3) Indeed, Dr. House's opinion was not accompanied by a description of functional limitations caused by Plaintiff's medical condition. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)

(finding no error where the ALJ rejected treating physician's opinion that claimant was disabled due to physician's failure to specify functional limitations). *See Batson v. Comm'r*, 359 F.3d 1190, 1195 fn. 3 (9th Cir. 2004) (ALJ may discredit treating physician's opinions that are conclusory brief and unsupported by objective medical findings; "Dr. Keenan's [treating source] treatment notes do not provide objective medical evidence of the limitations asserted in his report."); *Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir.1988) (ALJ properly rejected treating physician's opinion unsupported by medical findings, personal observations, or test reports).

Dr. House's treatment notes provide no support for the extreme limitations that he assessed. Dr. House ordered tests; however, the tests did not support his assessed limitations, and he did not in any way state test results or relate them to assessed limitations. Dr. House also provided no analysis, only conclusory statements. In response to a question asking for the basis of his opinion ("What are the objective findings upon which you base your opinion?"), Dr. House stated, "Symptoms of depression & anxiety, mental status examination consistent with the above complaints." AR 275. In contrast, treatment notes do not support this statement or Dr. House's opinion. AR 320-333. Treatment notes from Dr. House show consistently normal findings under the mental status examination section and only provide a few general subjective complaints.

Here, the ALJ did not credit Dr. House's medical opinion because it was not supported by medical findings and it was inconsistent with the medical record. These were appropriate reasons, and the ALJ was entitled to resolve the conflict between Dr. House's opinion and those of every other doctor in favor of the conclusion supported by the bulk of the objective evidence. Accordingly, the Court will not reverse the ALJ's decision for failure to properly weigh medical opinion testimony.

C. ***Lay Witness Testimony***

Next, Plaintiff argues that the ALJ erred by improperly rejecting the testimony of Plaintiff's wife, Dina Helm. (Doc. 17 at 13). The Commissioner contends the ALJ properly disregarded the third party function reports by Plaintiff's wife. (Doc. 20 at 16).

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). "Lay

testimony is not equivalent of medically acceptable diagnostic techniques that are ordinarily relied upon to establish disability." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill*, 12 F.3d at 919. Such testimony is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must consider competent lay testimony but in rejecting such evidence, he need only provide reasons for doing so that are "germane to [the] witness." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009). Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). However, inconsistency with medical evidence is a valid reason for rejecting a lay witness' testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In this case, the ALJ accurately summarized Dina Helm's statements as follows:

> Dina Helm, completed a third party function report on October 3, 2007. She reported Mr. Helm sometimes does light house work that doesn't take too much energy or thought. He sometimes helps with cooking the family dinner. He washes dishes and does some yard work, about 2 hours per week. He can walk a half mile before resting for 5 minutes. He can pay attention for 30 minutes. He has a fear of working or performing tasks.
>
> Mrs. Helm's completed another third party function report on June 21, 2008. In that document, she reported Mr. Helm gets up and lies on the couch and watches TV all day and takes naps. He can't work because he is too nervous and stresses, and has no energy to take care of the yard or anything else. He can't sleep at night, and then is exhausted all day. He thinks he starts feeling better and won't take his medicine and tries to adjust the dosage himself. He mows the lawn maybe once a month. He has to keep stopping because getting hot makes him sick and gives him a headache. She has to try to take care of the inside and the outside while he lies on the couch saying he doesn't feel good. He doesn't do house work because he is always depressed and lying down all day every day. He would get way too stressed out and wouldn't be able to figure out when to pay what bill. He wouldn't know how to handle a checking account. He doesn't have the energy to do anything but watch TV all day. He doesn't go anywhere very often. He doesn't want to socialize with family or friends. He has no stamina for stairs. He can only walk 1 or 2 blocks and then must rest for 5 to 10 minutes. He can pay attention for 10 minutes. He gets frustrated and will give up on written instructions. He would forget spoken instructions. He gets irritable if his routine is changed by getting off the couch...
>
> The third party statements by Mr. Helm's wife are not entirely consistent[.]

AR 26.

The above demonstrates that the ALJ's rejection of Mrs. Helm's testimony regarding Plaintiff's symptoms is based on the inconsistency between her function reports. Further, the Court finds that the ALJ's stated reasons for discrediting Mrs. Helm's testimony are supported by substantial evidence in the record. As the ALJ noted, Mrs. Helm's testimony is inconsistent as she gave inconsistent testimony in her 2007 and 2008 function reports. AR 161-168, 198-205. In 2007, Mrs. Helm reported no limitations regarding Plaintiff's ability to walk, climb stairs, understand or follow instructions. AR 166. However, in 2008, Mrs. Helm reported limitations in these areas. AR 203. Additionally, in 2007, Mrs. Helm stated that Plaintiff had memory issues but failed to note this in 2008. AR 166, 203. In 2007, Mrs. Helm stated that Plaintiff could walk one-half mile before needing to rest and could only pay attention for 30 minutes. AR 166. In 2008, she stated that Plaintiff could only walk one to two blocks before needing to rest and could only pay attention for 10 minutes. AR 203. Again, in 2007, Mrs. Helm noted no issue with getting along with family, friends, neighbors, or others, but, in 2008, she stated that Plaintiff had a problem in this area. AR 166, 203. Finally, Mrs. Helm stated in 2007 that Plaintiff went outside once or twice a week and had no change in his ability to handle money since his condition began, but then stated in 2008 that Plaintiff went outside daily and had a change in his ability to handle money since his condition began. AR. 164, 165, 201, 202.

Notably absent from the record are any statements by the Plaintiff or Mrs. Helm that Plaintiff's symptoms were worsening over time. The ALJ's acknowledgment of the inconsistences in Mrs. Helm's testimony—without a reasonable justification—are a germane reason for discounting Mrs. Helm's testimony. *See Hernandez v. Astrue*, 2010 U.S. Dist. LEXIS 49505, 2010 WL 2044531, at *7-*8 (C.D. Cal. 2010) (finding ALJ's rejection of lay witness testimony because of inconsistent statements in her own report was a germane reason).

Additionally, Mrs. Helm's testimony was inconsistent with Plaintiff's own statements. While, as stated above, Mrs. Helm testified that Plaintiff had problems getting along with family, friends, neighbors, and others, Plaintiff indicated no problem in this area. AR 182, 203, 211. Also, Mrs. Helm stated that Plaintiff could pay attention up to 30 minutes (AR 166, 203), but Plaintiff stated that he could not pay attention for any period. AR 211. Mrs. Helm also stated that Plaintiff

was only limited in up to 9 of 19 areas of function whereas Plaintiff stated that he was limited in all but 2 of the 19 areas. AR 211. Mrs. Helm's testimony is inconsistent and the Court finds that the ALJ gave proper weight to Mrs. Helm's testimony.

D. ***Plaintiff's Credibility***

Plaintiff contends that the ALJ failed to provide sufficient reasons to discredit his testimony. The Court disagrees.

An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce his alleged symptoms, but his statements about the intensity, persistence, pace and limiting effects of those symptoms are not credible to the extent they are inconsistent with my assessment of his residual functional capacity." AR 29. In rejecting Plaintiff's credibility, the ALJ provided several valid reasons. AR 29.

First, the ALJ presented evidence of malingering. A psychological evaluation report from 2009 stated that Plaintiff's test responses were "suggestive of symptom exaggeration." AR 281. In discounting Plaintiff's credibility, the ALJ found that "psychological testing indicated his responses indicate possible symptom magnification." AR 29. The ALJ was entitled to reject Plaintiff's testimony because there was evidence of malingering. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("ALJ gave a detailed explanation supporting" his finding that claimant was not credible, including pointing to a "doctor's observation that [claimant] showed 'poor effort'" on examination).

In addition to the evidence of malingering, the ALJ also gave clear and convincing reasons for rejecting Plaintiff's subjective complaints. First, the ALJ found that Plaintiff was not credible as he admitted to using prescribed marijuana for anxiety even though it was only prescribed for increasing appetite. AR. 29, 280. This was a valid reason for rejecting Plaintiff's credibility as an

ALJ may use failure to follow prescribed treatment as a basis for a finding that Plaintiff's complaints of disabling pain are unjustified or exaggerated. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)(en banc) (an ALJ is entitled to use the normal techniques of credibility evaluation to determine the validity of subjective complaints).

Next, the ALJ found that Plaintiff gave inconsistent statements regarding his limitations and activities. AR 29. The ALJ noted that Plaintiff testified that he could only walk to the mail box and back and then needed to rest; however, Plaintiff also testified that he could walk one-half to one mile before needing to rest. AR. 29, 182, 211. Likewise, the ALJ found that Plaintiff testified that he could pay attention for 30 minutes, but also testified that he could not pay attention for any period. AR 29, 182, 211. Furthermore, the ALJ noted that Plaintiff said, at one point, it took him an hour to mow the lawn and also said, at another point, that it took him up to two days to mow the lawn. AR. 29, 179, 208.

Here, the ALJ provided a number of specific reasons for discrediting Plaintiff's testimony, and identified specific testimony that was inconsistent with the record. Even were one reason relied upon by the ALJ in his credibility determination held to be error, any error was harmless. *See Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm. of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion such is deemed harmless and does not warrant reversal").

/////

/////

/////

/////

/////

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Kevin Helm.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: May 15, 2012** /s/ **Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE